# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| PATRICK SHOEMAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 7:21-cv-01616-SGC |
| COMMISSIONER, SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Patrick Shoemaker, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Shoemaker timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.   Procedural History

Shoemaker has at least a high school education and prior work experience as

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 11).

an electrician, metal plating cutter, and maintenance repairer. (Tr. at 32-33).[2] In his applications for DIB, as amended, Shoemaker alleged he became disabled on April 23, 2019, when he was in a serious motor vehicle accident that left him with a traumatic brain injury. (*Id.* at 23, 25, 27). After his claims were denied, Shoemaker requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 23). The ALJ held a hearing and, on January 29, 2021, denied Shoemaker's claims. (*Id.* at 34, 41). Shoemaker was 46 years old when the ALJ issued the decision. (*Id.* at 30). Shoemaker requested review of the ALJ's decision by the Appeals Council, which granted him an extension of time until April 18, 2021, to submit additional evidence. (*Id.* at 6, 8-9). The Appeals Council denied review of the ALJ's decision on October 8, 2021 (*id.* at 1-4), at which point that decision became the final decision of the Commissioner, *see Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Shoemaker commenced this action. (Doc. 1).

## II.   Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically

---

[2] Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at ___). Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. ___ at ___).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). An applicant for DIB must demonstrate disability between his alleged initial onset date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). An applicant for SSI must demonstrate disability between the date of his application for SSI and the date of the ALJ's decision. *Moore*, 405 F.3d at 1211. The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Shoemaker met the SSA's insured status requirements through June 30, 2022, and had not engaged in substantial gainful activity since April 23, 2019, the alleged onset date of his disability. (Tr. at 25).

If the claimant is not engaged in substantial gainful activity, the

Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined Shoemaker has the following severe impairments: a traumatic brain injury, depression, and degenerative disc disease.  (Tr. at 25).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  *Id.* at §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined Shoemaker does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 27).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. §§

404.1520(e), 416.920(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv) and (e). If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Shoemaker has the RFC to perform light work with certain limitations. (Tr. at 29).[3] At the fourth step, the ALJ determined Shoemaker is not able to perform his past relevant work. (*Id.* at 32).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is not

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Shoemaker's age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy, such as those of laundry folder, produce sorter, and mail clerk, that Shoemaker can perform. (Tr. at 33). Therefore, the ALJ concluded Shoemaker is not disabled. (*Id.* at 34).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Shoemaker argues (1) remand is warranted under sentence four of 42 U.S.C. § 405(g) because the Appeals Council erred in refusing to accept post-hearing evidence and (2) remand is warranted under sentence six of § 405(g) based on evidence presented for the first time to this court.

### A. Sentence Four Remand

A claimant generally may present additional evidence at each stage of the administrative process. 20 C.F.R. §§ 404.900(b), 404.970, 416.1400(b), 416.1470. The Appeals Council must consider "new, material, and chronologically relevant evidence" submitted by a claimant. *Id.* at §§ 404.970, 416.1470. Evidence is new

7

if it is not merely cumulative of the evidence that was before the ALJ. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Evidence is material if there is a reasonable probability it would change the administrative result. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if it relates back to the time of the ALJ's decision. *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322 (11th Cir. 2015).

Whether evidence is new, material, and chronologically relevant is a question of law subject to *de novo* review. *Id.* at 1321. Where the Appeals Council refuses to consider new, material, and chronologically relevant evidence, it commits an error of law, and remand to the Commissioner for consideration of the evidence in conjunction with the record is appropriate. *Id.* This type of remand is accomplished pursuant to sentence four of § 405(g). *See Arnold v. Comm'r of Soc. Sec.*, 724 F. App'x 772, 781 (11th Cir. 2018) (explaining sentence four of § 405(g) permits a district court to remand a case for rehearing where it determines the Commissioner committed an error of law) (citing *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996)).

Shoemaker was involved in a serious motor vehicle accident on April 23, 2019, when his truck struck a tree. (Tr. at 489). He suffered significant facial trauma, rib fractures, injuries to his extremities, and a traumatic brain injury. (*Id.* at 489-90). After a stay at UAB Hospital in Birmingham, Alabama, he completed an

intensive, multidisciplinary inpatient rehabilitation program at UAB Spain Rehabilitation Center. (*Id.* at 490, 503). He was followed thereafter by Robert C. Brunner, M.D. The physician profile for Dr. Brunner available on UAB's website indicates he is the Medical Director of Spain Rehabilitation Center Inpatient Hospital and treats patients with traumatic brain injuries.[4] The record before the ALJ included Dr. Brunner's treatment notes from Shoemaker's follow-up appointments on July 10, 2019; October 10, 2019; December 19, 2019; February 6, 2020; April 7, 2020; June 25, 2020; and September 22, 2020. (*Id.* at 597-600, 621-25, 639-43, 648-52, 667-71, 672-76). As stated, the ALJ issued the decision denying Shoemaker's claims on January 29, 2021. (*Id.* at 34).

Shoemaker thereafter submitted to the Appeals Council a Medical Source Statement from Dr. Brunner dated March 2, 2021. (*Id.* at 17-19). The Medical Source Statement, presented as a form completed by Dr. Brunner, asked Dr. Brunner to estimate Shoemaker's "current" degree of impairment in 18 areas of mental functioning. (*Id.* at 17). Dr. Brunner indicated Shoemaker was moderately or markedly impaired in each of these areas. (*Id.* at 17-19). He answered "yes" to the question asking whether Shoemaker's impairments "have lasted or can be expected to last for 12 months or longer." (*Id.* at 19). And he stated that "[g]iven

---

[4] *See* https://www.uab.edu/medicine/physicalmedicine/component/content/article?id=130:brunner-robert-md.

9

[Shoemaker's] constellation of symptoms[,] [it] would be unlikely for him to be able to be gainfully employed." (*Id.* at 19).

The Appeals Council rejected the evidence on the ground it did not relate to the period at issue: April 23, 2019, the alleged onset date of Shoemaker's disability, through January 29, 2021, the date of the ALJ's decision denying Shoemaker's claims. (*Id.* at 2).

The Appeals Council did not err by rejecting Dr. Brunner's Medical Source Statement on the ground it did not relate to the period at issue or, otherwise put, on the ground it was not chronologically relevant. The Medical Source Statement asked Dr. Brunner to estimate Shoemaker's "current" degree of impairment. (*Id.* at 17). Dr. Brunner completed the Medical Source Statement on March 2, 2021. (*Id.* at 19). Therefore, when Dr. Brunner indicated on the form that Shoemaker had moderate or marked impairments in 18 areas of mental functioning, he was indicating the impairments existed as of March 2, 2021, approximately one month after the ALJ's decision denying Shoemaker's claims.

The Medical Source Statement also asked Dr. Brunner to answer "yes" or "no" to the question of whether Shoemaker's impairments "have lasted or can be expected to last for 12 months or longer." (*Id.* at 19). Dr. Brunner's affirmative answer could indicate Shoemaker's impairments had been present for 12 months or longer, in which case Shoemaker would have a better argument Dr. Brunner's

10

opinions relate back to the period before the ALJ's decision, *or* that Shoemaker's impairments as they existed on March 2, 2021, were expected to continue for at least 12 months, in which case the answer says nothing about Shoemaker's condition at the time of the ALJ's decision.

Shoemaker emphasizes medical opinions formed after an ALJ's decision may be chronologically relevant, even where there is no explicit statement the opinions relate back to the time of the ALJ's decision. (Doc. 15 at 2-3; Doc. 18 at 1-2). This is true. The Eleventh Circuit held in *Washington* that the opinions of a psychologist who examined the claimant for the first time approximately seven months after the ALJ's decision were chronologically relevant, even though the psychologist never explicitly stated his opinions related back to the time of the ALJ's decision, because (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist reviewed the claimant's mental health treatment records for the relevant period, and (3) there was no evidence the claimant's mental functioning declined in the period following the ALJ's decision. 806 F.3d at 1322-23.

But the Eleventh Circuit limited its holding in *Washington* to "the specific circumstances of [that] case." *Id.* at 1323; *see also Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1309 (11th Cir. 2018) (noting limited nature of holding in *Washington*); *Griffin v. Comm'r of Soc. Sec.*, 842 F. App'x 339, 341 (11th Cir. 2021)

11

(same); *Howze v. Comm'r of Soc. Sec.*, 2022 WL 152236, at *3 (11th Cir. Jan. 18, 2022) (noting Eleventh Circuit "expressly limited [the holding of *Washington*] to its facts"). And those specific circumstances are not present here. While there is no evidence Shoemaker's mental functioning declined between the ALJ's decision and Dr. Brunner's Medical Source Statement, there also is no indication Dr. Brunner's Medical Source Statement spoke to Shoemaker's condition not just as of March 2, 2021, but also as it existed at the time of the ALJ's decision.[5] The absence of evidence linking the impairments articulated by Dr. Brunner to the time of the ALJ's decision distinguishes this case from *Washington*. *See, e.g., Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 860, 864 (11th Cir. 2017) (holding questionnaires completed three months after ALJ's decision by rheumatologist who had last treated claimant nine months before decision were not chronologically relevant because there was no indication the rheumatologist's opinions were based on treatment

---

[5] The Commissioner asserts in her brief that Shoemaker contends he has experienced a substantial decline in functioning from late 2019. (Doc. 17 at 9-10). The basis of this assertion is a neuropsychological evaluation performed by John R. Goff, Ph.D., in May 2021. (Doc. 15-2; Doc. 17 at 9). Dr. Goff noted that, while Shoemaker had undergone neuropsychological testing in August and November 2019, he was not administered a comprehensive intelligence test. (Doc. 15-2 at 2). Dr. Goff administered the fourth edition of the Wechsler Adult Intelligence Scale to Shoemaker, and Shoemaker obtained a Full-Scale Intelligence Quotient ("FSIQ") score of 75. (Doc. 15-2 at 4). Dr. Goff found the score "reflect[ed] a substantial decline from previous levels of functioning." (Doc. 15-2 at 4). It seems the Commissioner interprets this finding to mean the FSIQ score Shoemaker obtained in May 2021 reflected a substantial decline in functioning from the results of the neuropsychological testing performed in August and November 2019. But review of Dr. Goff's finding in context shows Dr. Goff was comparing the FSIQ score Shoemaker obtained in May 2021 to an estimate of his functioning prior to the April 23, 2019 motor vehicle accident he alleges rendered him disabled. (Doc. 15-2 at 4; Doc. 18 at 4-5).

12

provided to claimant before decision or medical records predating decision); *Howze*, 2022 WL 152236, at *1, 3 (holding form completed after ALJ's decision by doctor who treated claimant before decision, explicitly stating claimants physical limitations predated decision, was not chronologically relevant because there was no indication doctor's opinions were based on treatment provided to claimant before decision or medical records predating decision).

Notwithstanding the absence of this evidence, Shoemaker suggests his argument for relation back is stronger than that of the claimant in *Washington* because Dr. Brunner was his treating physician during the relevant period and completed his Medical Source Statement approximately one month after the ALJ's decision, whereas the psychologist in *Washington* formed his opinions after examining the claimant in that case for the first time approximately seven months after the ALJ's decision. (Doc. 15 at 3). But the Eleventh Circuit has noted the identity of the medical source who submits "new" evidence to the Appeals Council on behalf of a claimant – whether the source was a treating provider during the period before the ALJ's decision – is not dispositive of the question of chronological relevancy but, rather, one factor to consider. *Howze*, 2022 WL 152236, at *3. It stands to reason the same is true of length of time that elapses between the ALJ's decision and formation of a medical opinion. Although the treating relationship between Dr. Brunner and Shoemaker and the short length of time that elapsed

between the ALJ's decision and Dr. Brunner's Medical Source Statement may be factors that support Shoemaker's argument, they are not sufficient to demonstrate the chronological relevancy of the Medical Source Statement absent additional evidence Dr. Brunner based his opinions on treatment provided to Shoemaker before the ALJ's decision or medical records predating the decision. *See, e.g., Horowitz* (discussed above). For these reasons, the Appeals Council did not err in refusing to accept Dr. Brunner's Medical Source Statement on the grounds it was not chronologically relevant.[6]

### B. Sentence Six Remand

Just as a claimant generally may present additional evidence at each stage of the administrative process, he also may present additional evidence to the district court on appeal from the denial of benefits. But remand to the Commissioner for consideration of evidence presented for the first time at the district court level is appropriate only if, in addition to showing the evidence is new, material, and chronologically relevant, the claimant shows good cause for failing to submit the evidence at the administrative level. *Ingram*, 496 F.3d at 1267; *Wilson v. Apfel*, 179 F.3d 1276, 1278-79 (11th Cir. 1999). This type of remand is accomplished pursuant

---

[6] Because the Medical Source Statement is not chronologically relevant, the court declines to address the Commissioner's alternative argument the statement is not material or Shoemaker's rebuttal the court cannot consider the Commissioner's alternative argument because the immateriality of the statement was not a reason given by the Appeals Council for refusing to accept the evidence. (Doc. 15 at 3; Doc. 17 at 10-12; Doc. 18 at 2-3).

to sentence six of § 405(g).  *Ingram*, 496 F.3d at 1261.

"The good cause requirement was designed to avoid the danger of encouraging claimants to seek after-acquired evidence . . . and use such evidence as an unsanctioned backdoor means of appeal."  *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987).  The Eleventh Circuit has stated there *may be* good cause where the evidence did not exist at the administrative level.  *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985); *see also Milano*, 809 F.2d at 766-67 (using same "may" language); *Caulder*, 791 F.2d at 878-79 (same).  But the Eleventh Circuit also has stated simply that there *is* good cause where the evidence did not exist at the time of the administrative proceedings.  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).  This has created at least some disagreement among lower courts as to whether the fact that evidence did not exist at the administrative level is sufficient to create good cause or whether that sufficiency depends on the circumstances.  *Compare Harris v. Apfel*, 1999 WL 33915955, at *2-3 (S.D. Ala. Oct. 14, 1999) (interpreting "may" language in *Cherry* line of cases to "contemplate[] that satisfaction of the good cause requirement on the basis of prior non-existence of the evidence depends on the circumstances" and determining that, whatever *Cannon* may purport to say, its holding is "perfectly consistent" with *Cherry*), *Cumbess v. Astrue*, 2009 WL 3064526, at *2 (M.D. Ga. Sept. 22, 2009) (holding good cause requirement is not satisfied merely by demonstrating evidence did not exist at

15

administrative level because a rule otherwise would allow plaintiff who was not successful at administrative level to "get a second chance simply by procuring and submitting a newly created report from a physician or other professional"), *and Pitochelli v. Comm'r of Soc. Sec.*, 2021 WL 825089, at *5 (M.D. Fla. Mar. 4, 2021) (rejecting argument good cause exists automatically where evidence came after administrative proceedings), *with Tolbert v. Colvin*, 2014 WL 3889476, at *2 n.13 (N.D. Ala. Aug. 4, 2014) (rejecting argument non-existence of evidence at administrative level does not *always* constitute good cause, citing, *inter alia*, *Cannon*). But there is no need to take a side in this case.

Shoemaker has presented to this court evidence that was not part of the record before the ALJ or submitted to the Appeals Council: (1) a letter from James A. Abernathy, II, the attorney who represents Shoemaker at the district court level, dated January 19, 2022, asking Dr. Brunner to clarify the basis of the opinions expressed in his March 2, 2021 Medical Source Statement and whether those opinions pertain to a time earlier that March 2, 2021; (2) the declaration of Drew Emerson, the attorney who represented Shoemaker at the administrative level; and (3) a neuropsychological evaluation completed by John R. Goff, Ph.D., on May 11, 2021. (Docs. 15-1, 15-2, 15-3).[7] The letter sent to Dr. Brunner includes Dr.

---

[7] Dr. Goff interviewed and tested Shoemaker on May 10, 2021, and completed his written report on May 11, 2021. (Doc. 15-2 at 1, 7).

Brunner's handwritten responses to the questions presented, indicating his opinions were based on Shoemaker's history of treatment and related back to the traumatic brain injury Shoemaker suffered on April 23, 2019. (Doc. 15-1). Emerson states in his declaration that "the Vocational Rehabilitation Service" requested Shoemaker be evaluated by Dr. Goff and that he did not receive a copy of Dr. Goff's May 10, 2021 evaluation from the Vocational Rehabilitation Service until September 30, 2021. (Doc. 15-3). He further states he contacted the Appeals Council on October 1, 2021, to inquire about submitting the evaluation for consideration but was told the time for submission of additional evidence had passed and the Appeals Council was finalizing its decision. (Doc. 15-3).

The January 19, 2022 letter did not exist at the administrative level, but that is only because it was generated to rebut the reason given by the Appeals Council for refusing to accept Dr. Brunner's Medical Source Statement. (In Shoemaker's phrasing, the letter was generated to *clarify* Dr. Brunner's Medical Source Statement. (Doc. 15 at 8; Doc. 18 at 3). The ultimate purpose of the clarification, though, was to refute the reason given by the Appeals Council for refusing to accept the statement.) There is a distinction to be made between evidence that did not exist at the administrative level because it could not have existed at the administrative level, as was the case in *Cannon*, and evidence that did not exist at the administrative level because it was created in response to an unfavorable administrative decision.

17

*See Cannon*, 858 F.2d at 1546 (addressing physical capacities evaluation completed by treating physician after claimant was hospitalized following administrative proceedings and during pendency of appeal to district court, indicating claimant's limitations dated back to alleged onset date of disability).  The latter scenario falls squarely within the bounds of the conduct the good cause requirement was designed to discourage.  *See Kinard v. Astrue*, 2010 WL 1793906, at *4 (M.D. Fla. Apr. 6, 2010) (holding checklist completed by consultative examiner after administrative proceedings, indicating claimant's limitations predated ALJ's decision, did not provide basis for remand because nothing prevented claimant from securing checklist before conclusion of administrative proceedings and only reason claimant offered late submission of evidence was defendant's unwillingness to remand case to Commissioner), *report and recommendation adopted*, 2010 WL 1793902 (M.D. Fla. May 5, 2010).  Even assuming the law in the Eleventh Circuit is that there is – as opposed to may be – good cause where evidence did not exist at the time of the administrative proceedings, this court can say that, at the very least, the rule yields where its enforcement would frustrate the purpose of the good cause requirement.

And Dr. Goff's evaluation *did* exist at the administrative level.  Dr. Goff completed the evaluation on May 11, 2021.  (Doc. 15-2 at 7).  The Appeals Council did not issue its decision denying review until October 8, 2021.  (Tr. at 1).  Shoemaker emphasizes Emerson did not receive Dr. Goff's May 11, 2021 evaluation

until September 30, 2021, and promptly contacted the Appeals Council about submitting the evaluation for consideration. (Doc. 15 at 8; Doc. 18 at 7). But Shoemaker has not explained why Emerson did not seek a copy of the evaluation in the four months between the evaluation and his receipt of the evaluation. Shoemaker notes Dr. Goff performed the evaluation at the request of Vocational Rehabilitation Services and that Vocational Rehabilitation Services supplied the evaluation to Emerson. (Doc. 15 at 8; Doc. 18 at 7). The implication is that Emerson did not know, and had no reason to know, of the evaluation. But *Shoemaker* knew of the evaluation. The evaluation was a study of Shoemaker. Insofar as Emerson served as Shoemaker's representative at the administrative level, Shoemaker's knowledge is imputed to Emerson.

Shoemaker also suggests any attempt to obtain a copy of the evaluation sooner would have been futile because his deadline to submit additional evidence to the Appeals Council had expired by the time Dr. Goff performed the evaluation. (Doc. 15 at 8; Doc. 18 at 7). But that deadline expired on April 18, 2021, less than one month before Dr. Goff's evaluation. Emerson stated in his declaration that, when he contacted the Appeals Council on October 1, 2021, about submitting the evaluation for consideration, he was told the time for submission of additional evidence had passed *and* the Appeals Council was finalizing its decision. This statement leaves open the possibility that, if Emerson had sought to submit Dr. Goff's evaluation in

19

mid-May 2021, the Appeals Council would have considered the evidence because, although the deadline for submission of additional evidence had passed, the council was not finalizing its decision at that time. *See Whitaker ex rel. L.B. v. Colvin*, 2015 WL 3558560, at *11 (S.D. Ga. June 4, 2015) (holding good cause was lacking where physician's report was dated less than one month after deadline Appeals Council gave for submission of additional evidence but five months before Appeals Council rendered decision). For these reasons, Shoemaker has not shown good cause for failing to submit the additional evidence at the administrative level.

## V.    Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 17th day of March, 2023.

*[signature]*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE